## Brumagin's Petition.

*Petition for declaratory judgment—Title to real estate—Act of June 18, 1923.*

The Act of June 18, 1923, P. L. 840, is not intended to permit, much less require, the courts to answer abstract propositions of law or meet questions which are merely academic. Neither is it intended to confer on the courts jurisdiction to advise fiduciaries in the discharge of their duties. The act contemplates the solution of a real controversy between adverse parties. If the legislature has made it incumbent upon the courts to construe the law as provided in section 15 of the Declaratory Judgment Act, has prescribed a formula which the court must observe, and has instructed the courts how they must interpret the law, then the legislature has exceeded its constitutional restrictions.

Petition for declaratory judgments. O. C. Erie Co., May T., 1924, No. 126.

*Wilbur R. Seabrook,* for petitioners.

CLARK, P. J.—The petition sets forth, *inter alia,* that Mark D. Maynard and wife and Sarah Plubell, formerly Sarah Maynard, conveyed to the Shreve Chair Company certain described real estate, being a farm of about 175 acres, by deed recorded in the Recorder's Office of Erie County, Pennsylvania, in Deed Book 255, page 10, and Deed Book 243, page 402, and that the Shreve Chair Company conveyed the same to Ray Brumagin and Marguerite O. Brumagin, his wife, by deed recorded in said office in Deed Book 249, page 359, and the said Ray Brumagin and Marguerite O. Brumagin conveyed the same land to Frank Wroblewski and Helena Wroblewski, his wife, by deed recorded in said office in Deed Book 281, page 347.

The last four named persons are the petitioners, and they aver that they believe that Mark D. Maynard had a fee simple title to the land in question, subject only to the life use of Sarah Maynard, but that there is some doubt about the interest or title he received under the will of his father, P. H. Maynard.

The petitioners ask for a judgment or decree to determine the title of Mark D. Maynard in the aforesaid land. He surely is interested and yet is not a party to this proceeding. Neither is the Union Chair Company or any other who may be interested in the judgment or decree prayed for, except the aforesaid petitioners. By proper procedure they might have been cited to appear and have their day in court and be heard, but they were not, and the petition ought to be dismissed on this ground, for the act under which the petition is made provides that: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the right of persons not parties to the proceeding."

Were we to decide that Maynard had only a life interest, of what value would the decision be?

It would not be binding on Maynard or the Shreve Chair Company, for they are "not parties to the proceeding."

The petitioners believe they have a valid title; there is no person here contending otherwise. They assert "that there is some doubt" about it. There is no party of record upholding or sustaining such doubt. How does it arise? Possibly from a casual remark by some one who has no interest in any judgment or decree that might be made.

The will provides, *inter alia,* as follows:

"I bequeath unto my beloved wife, Sarah, the use, control and management so long as she shall remain my widow of the Home farm consisting of about

Brumagin's Petition.

two hundred and fifty acres of land together with all personal property kept on or about the home place consisting of horses, cattle and all other stock on or about the home farm—also tools, furniture, money, bonds, notes, or evidences of indebtedness to be used, controlled, and the business to be carried by her as her judgment shall dictate, so long as she remains my widow in trust for my youngest son Mark D. Maynard and to his heirs after him. I bequeath to my son, Mark D. Maynard, all personal property, stock, tools, moneys, notes, bonds or evidences of indebtedness which may remain after my wife Sarah is through with the estate bequeathed to her in trust—also all profits that may accrue from the estate bequeathed to my wife in trust after all expenses and obligations are paid shall be and remain the absolute property of my said son Mark D. Maynard forever excepting always the home farm consisting of two hundred and fifty acres which I bequeath to my said son, Mark D. Maynard, and to his heirs after him forever."

P. H. Maynard, the testator, died Sept. 30, 1900. His will was probated Oct. 6, 1900, and letters testamentary were granted to Sarah S. Maynard. Nothing further appears of record as having been done in the settlement of this estate.

Nearly twenty-four years have passed since testator's death. There has not been an inventory or any account filed by the fiduciary, and she has remarried. Her trust under the will continued only so long as she remained the testator's widow. She quit-claimed for a valuable consideration all her interest in the land of her late husband, P. H. Maynard, the testator, to the Shreve Chair Company.

Even if all persons who had or have any interest in the Maynard estate, or whose rights might be affected by any declaratory judgment, were parties here adversely claiming title, the Orphans' Court did not have jurisdiction to determine the controversy prior to the passage of the Uniform Declaratory Judgments Act, and does not now: Ludwick's Estate, 255 Pa. 548.

If the act conferred jurisdiction on the Orphans' Court, the act is unconstitutional, for its title would be defective: Duff's Estate, 4 D. & C. 315.

Article III, section 3, of the Constitution of Pennsylvania, provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

Many judicial decisions have been made relative to sufficient and defective titles. See 1 Purdon's Digest (13th ed.), 144.

The title to the Act of June 18, 1923, P. L. 840, is, "Concerning declaratory judgments and decrees and to make uniform the law relating thereto."

There are grave doubts as to the constitutionality of the act, and in the pleadings of the case last cited it was challenged, but the objections were withdrawn and the petition dismissed for other reasons, but the court, Judge Gest delivering the opinion, in commenting on the act, says: "That the act is clearly not intended to permit, much less require, the courts to answer abstract propositions of law or meet questions which are merely academic. This much appears to be conceded by every one. Nor do we think it is intended to confer on the courts that jurisdiction to advise fiduciaries in the discharge of their duties, which, although it may obtain in some states, has never been allowed in Pennsylvania. A mere advisory opinion upon an abstract question is obviously not a question at all. The act contemplates the solution of a real controversy between adverse parties. We are of the opinion that the act, which is professedly remedial, should not be held to operate where the evil intended to be remedied does not exist."

The opinion thus expressed is applicable to the proceedings before us.

This act is an innovation somewhat confusing in its provisions; there is no finality of judgment terminating a controversy, for judgments, orders and decrees may be reviewed as set forth in the 7th section. If the right of appeal to the higher court is not contemplated in this section, it is nowhere found in the act. The 1st section provides that "declarations shall have the force and effect of a final judgment and decree."

The general purpose of the act is "to make uniform the law of those states which enact it, and to harmonize, as far as possible, with Federal laws and regulations on the subject of declaratory judgments and decrees," and it is mandatory upon the courts "that this act shall be so interpreted and construed as to effectuate its general purpose." See section 15 of this act.

How can the courts of this Commonwealth interpret and construe this act to make it uniform with the law already enacted by another state? If the legislature of another state enacts a law precisely the same as our Act of June 18, 1923, P. L. 840, how can the interpretation of this act by our courts have any effect upon the law of that other state?

The making of the law of other states uniform with our own act is a legislative function of the law-creating bodies of these states, and, when once enacted, any decision of our courts would in no way impair or have any effect upon the uniformity of that law.

If, however, the legislature of our own State has made it incumbent upon our courts to construe the law as provided in section 15, has prescribed a formula which the courts must observe, and has instructed the courts how they must interpret the law, then the legislature has in this instance exceeded its constitutional restrictions. The act in a certain sense commands the court to participate in legislative action. This the court cannot and has not any authority to do, and the legislature is without power to pass such legislation.

The duties and powers of the legislative and judicial divisions of our government are well defined in our State Constitution, and one cannot encroach upon the other; each must perform its duties within its constitutional limitations. This section is confusing, not readily understood and impractical in its intended operation.

It is difficult to understand how the judgments and decrees of the lower courts upon any question submitted could effectuate uniformity. Their decisions would vary; they might not be right; only the opinions of the appellate court could effectuate that uniformity so much desired by the proponents of this act.

The history and development of uniform law legislation is interesting and instructive. A careful consideration and analysis of it requires more than the disposition of the instant case demands.

Uniform laws may be commendable for some subjects, but a serious and perplexing difficulty arises in the effort to enact uniform legislation, and this especially applies to the act under consideration.

An act must be drawn to meet the legislative enactments, procedure and constitutional provisions which vary in the several states. It must be adapted to these requirements, and the result is dissimilarity and not identical uniformity and sometimes conflicting laws.

An act (No. 361 of the Public Acts of 1919) was passed by the Michigan legislature empowering the courts to render declaratory judgments, but the Supreme Court of that state held the act unconstitutional, such judgments not being an exercise of judicial power and the legislature cannot confer upon the courts any powers not judicial: Anway v. Grand Rapids Ry. Co., 179 N. W. Repr. 350.

Brumagin's Petition.

In Pennsylvania we have long had laws and a procedure amply sufficient to determine questions arising in the settlement of estates and to determine real controversies which might be submitted to the Orphans' Court under the Act of June 18, 1923, P. L. 840. Many of the questions would be non-judicial, and a declaratory judgment by that court in relation thereto, on an appeal to the Supreme Court, would not impose upon that court the duty of considering it, for "No duties shall be imposed by law upon the Supreme Court or any of the judges thereof except such as are judicial:" Article v, section 21, Constitution of Pennsylvania.

Our comment upon this act is only made because the legislation is new, and it may open up avenues for investigation and reflection for persons intending to avail themselves of the act before attempting to apply it.

There is another tribunal wherein the determining of title to land claimed by adverse parties may be decided. Bills in equity and ejectment afford remedial relief for settling disputes and removing clouds, fancied or real, from title, and that jurisdiction is not ours.

The petition before us is dismissed, at the cost of the petitioners, without prejudice to the parties to proceed elsewhere.

From Lytle F. Perry, Erie, Pa.